**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER P. IRVING | | |
| Plaintiff, | | |
| v. | | Case No. |
| COOK COUNTY SHERIFF'S OFFICE, SUPERINTENDENT MARTHA YOKSOULIAN, in her individual capacity, SUPERINTENDENT ERICA QUEEN, in her individual capacity, SUPERINTENDENT ESEQUIEL IRACHETA, in his individual capacity, LIEUTENANT LANESHIA PONDEXTER, in her individual capacity, SERGEANT PATRICK FITZGERALD, in his individual capacity, OFFICER DANIEL LAKOWSKI, in his individual capacity, OFFICER ALECIA LOBIANCAO, in her individual capacity, and COOK COUNTY, as indemnitor | | |
| Defendants. | | Plaintiff Demands Trial By Jury |

<u>**COMPLAINT**</u>

Plaintiff CHRISTOPHER IRVING, by and through his undersigned attorneys, complains against Defendants COOK COUNTY SHERIFF'S OFFICE, SUPERINTENDENT MARTHA YOKSOULIAN, in her individual capacity, SUPERINTENDENT ERICA QUEEN, in her individual capacity, SUPERINTENDENT ESEQUIEL IRACHETA, in his individual capacity, LIEUTENANT LANESHIA PONDEXTER, in her individual capacity, SERGEANT PATRICK FITZGERALD, in his

individual capacity, OFFICER DANIEL LAKOWSKI, in his individual capacity, OFFICER ALECIA LOBIANCAO, in her individual capacity, and COOK COUNTY, as indemnitor, and states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to redress violations pursuant to 42 U.S.C. § 1983 for failure to protect him from harm under the Fourteenth Amendment of the United States Constitution.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 28 U.S.C. § 1343.

3. Further, venue is proper in this judicial district in accordance with 28 U.S.C. § 1391(b) and (c), Plaintiff resides in this district, Defendants' principal place of business is in this district, and all events giving rise to Plaintiff's claims occurred within this district.

## PARTIES

4. Plaintiff CHRISTOPHER IRVING ("Plaintiff" or "Irving") is a citizen of the United States who resides in Cook County, Illinois.

5. At the time of the occurrence of these events, Irving was a pre-trial detainee in the custody of the Cook County Department of Corrections.

6. At all relevant times, Defendant COOK COUNTY SHERIFF'S OFFICE maintained the Cook County Department of Corrections. Sheriff Thomas Dart has the

ultimate decision-making authority in terms of the Sheriff's Office's treatment of Plaintiff.

7.     At all relevant times hereto, Defendant MARTHA SUPERINTENDENT YOUKSOULIAN served in her position of at the discretion and pleasure of the Sheriff.

8.     Defendant SUPERINTENDENT YOKSOULIAN is a final policy maker and decision maker for the Sheriff's Office and with regard to her acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant SUPERINTENDENT YOUKSOULIAN.

9.     Defendant SUPERINTENDENT YOUKSOULIAN acted under color of law in the acts and omissions described herein.

10.     At all relevant times hereto, Defendant SUPERINTENDENT ERICA QUEEN served in her position of at the discretion and pleasure of the Sheriff.

11.     Defendant SUPERINTENDENT QUEEN is a final policy maker and decision maker for the Sheriff's Office and with regard to her acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant SUPERINTENDENT QUEEN.

12.     Defendant SUPERINTENDENT QUEEN acted under color of law in the acts and omissions described herein.

13.     At all relevant times hereto, Defendant SUPERINTENDENT ESEQUIEL IRACHETA served in his position of at the discretion and pleasure of the Sheriff.

14. Defendant SUPERINTENDENT IRACHETA is a final policy maker and decision maker for the Sheriff's Office and with regard to his acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant SUPERINTENDENT IRACHOTA.

15. Defendant SUPERINTENDENT IRACHETA acted under color of law in the acts and omissions described herein.

16. At all relevant times hereto, Defendant LIEUTENANT LANESHIA PONDEXTER served in her position of at the discretion and pleasure of the Sheriff.

17. Defendant LIEUTENANT PONDEXTER is a final policy maker and decision maker for the Sheriff's Office and with regard to her acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant LIEUTENANT PONDEXTER.

18. Defendant LIEUTENANT LANESHIA PONDEXTER acted under color of law in the acts and omissions described herein.

19. At all relevant times hereto, Defendant SERGEANT FITZGERALD served in his position of at the discretion and pleasure of the Sheriff.

20. Defendant SERGEANT FITZGERALD is a final policy maker and decision maker for the Sheriff's Office and with regard to his acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant SERGEANT FITZGERALD.

21.     Defendant SERGEANT FITZGERALD acted under color of law in the acts and omissions described herein.

22.     At all relevant times hereto, Defendant OFFICER LAKOWSKI served in his position of at the discretion and pleasure of the Sheriff.

23.     Defendant OFFICER LAKOWSKI is a final policy maker and decision maker for the Sheriff's Office and with regard to his acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant OFFICER LAKOWSKI.

24.     Defendant OFFICER LAKOWSKI acted under color of law in the acts and omissions described herein.

25.     At all relevant times hereto, Defendant LOBIANCAO served in her position of at the discretion and pleasure of the Sheriff.

26.     Defendant OFFICER LOBIANCAO is a final policy maker and decision maker for the Sheriff's Office and with regard to her acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant OFFICER LOBIANCAO.

27.     Defendant OFFICER LOBIANCAO acted under color of law in the acts and omissions described herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

28.     Plaintiff exhausted his administrative remedies by filing a grievance and appeal, which was denied, regarding the assault that occurred and the conditions preceding it that led to the assault.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

29.    Plaintiff was a police officer in Calumet Park, Illinois from October 1993 to May 2003.

30.    Plaintiff was arrested on June 26, 2019 and charged with eight counts of First Degree Murder (750-5/9-1(A)(1)) and (750-5/9-1(A)(2)); and one count of Aggravated Discharge of a Firearm (720-5/24-1.2(A)(2)).

31.    Plaintiff was placed in the custody of the Cook County Department of Corrections.

32.    Plaintiff was arraigned on June 28, 2019. He was denied bail and ordered placed in protective custody. The Order specifically set out the risk to Plaintiff that required protective custody stating: "As a former member of law enforcement Christopher Irving shall be placed in protective custody while in the Cook County Jail."

33.    The Prisoner Data Sheet dated June 28, 2019, stated that Plaintiff was to be in protective custody.

34.    On June 28, 2019 an Incident Report was created by Officer Cruz that Plaintiff was on court ordered protective custody. Notifications were made to Lt. Rodriquez, Superintendent Queen, Investigator Orlich, and others as necessary.

35.    The continuance Orders of the Court dated July 18, 2019, July 30, 2019, August 14, 2019, September 16, 2019, September 20, 2019, September 27, 2019, and November 6, 2019, December 13, 2019, January 31, 2020, March 10, 2020 were all marked "P.C." noting that the Plaintiff was to be held protective custody.

36.     Plaintiff was uniformed in a yellow jumpsuit that indicated that he was supposed to be a protective custody detainee.

37.     On February 17, 2020, Plaintiff filed a grievance regarding not receiving commissary while housed in Division 8 Cermak in an isolation cell. Plaintiff again notified Defendants through the grievance process that he was court ordered protective custody.

38.     Plaintiff was moved and housed in general population from April 21, 2020 to May 21, 2020. On May 19, 2020, Plaintiff filed a grievance stating that he was supposed to be court ordered protective custody but was being housed in general population with a cellmate. He complained that he was receiving daily verbal threats, having urine and feces thrown at him and sprayed with spray bottles.

39.     On May 21, 2020, Plaintiff was moved to Division 9-2-F. Plaintiff was housed in a cell by himself, but would be with other detainees when out of his cell. While in this Division, Plaintiff's former shift partner from when he worked in law enforcement was assigned as a Correctional Officer. CO Alecia LoBianco, stated to Plaintiff, "Don't tell anyone you know me." Plaintiff responded, "likewise."

40.     On July 25, 2020 another Correctional Officer, Ewald, asked Plaintiff how long he had been a cop. Correctional Officer Ewald said that he learned that Plaintiff was a police officer from Officer LoBianco. Inmate Devonte Watson, "Little D," also said that he was told by a correctional officer that Plaintiff was a cop.

41.     On August 11, 2020, Plaintiff filed a grievance complaining about the spread of information. Superintendent Irachota responded to the grievance stating that he was aware of the situation and had informed the Lieutenants and that CO LoBiancao would not be assigned to Plaintiff's unit.

42.     On October 23, 2020, Plaintiff was moved to Division 10-1-C again housing him in general population with a cellmate. Plaintiff complained that there was a rise in COVID 19 cases. He also complained that he was in fear for his health and safety. Plaintiff filed a grievance that was signed by Lt. Pondexter on October 27, 2020. Superintendent Yoksoulian denied Plaintiff's grievance on October 30, 2020.

43.     Plaintiff complained verbally and in writing over 4 months that he needed to be housed in "housed alone/out alone status" due to the threats that he was receiving. Plaintiff filed three grievances expressing his health and safety concerns.

44.     On November 20, 2020, Plaintiff informed the judge that he was supposed to be confined in protective custody and he needed to be "housed alone/ out alone." The Judge said that it was within the Sheriff's Office's authority to grant "housed alone/out alone status."

45.     On November 25, 2020, Plaintiff was assaulted in the Division 10 dayroom. Officer Lakowski and Sergeant Fitzgerald were working in the "bubble." Officer Lakowski heard inmate Cedric Johnson, "Skinny Mo," threatening Plaintiff prior to the assault. Plaintiff let Skinny Mo use the microwave first, then he used it, closing the interlock around him to protect himself. Plaintiff microwaved some oatmeal and

8

took a walk around the day room while stirring his oatmeal. When Plaintiff was on the far side of the dayroom, Skinny Mo ran up and punched him in the face. Skinny Mo advanced on Plaintiff again and grabbed him and threw him against the metal dayroom table and stools. Skinny Mo knocked Plaintiff to the ground and straddled him punching him repeatedly in the face. Plaintiff lost consciousness for a few seconds.

46.     No officer intervened to stop the assault despite seeing it from the "bubble."

47.     After Skinny Mo left Plaintiff lying on the ground, Plaintiff got up and walked toward the bubble to the officers for help. Officer Lakowski was standing at the door waiting for Plaintiff.

48.     Plaintiff was let into the hallway where he sat writhing and moaning in pain for several minutes waiting for medical treatment.

49.     Plaintiff was hospitalized for three and ½ days at Mount Sinai Hospital for his physical injuries. Plaintiff had a broken nose that required stitches. He had fractured ribs which perforated his lungs. The Doctor said he will need plastic surgery in the future. Plaintiff continues to have back pain and difficulty breathing. Plaintiff also continues to have trouble hearing, ringing in his ears, and issues with his eyesight.

50.     Plaintiff also suffered emotional injuries as a result of the assault.

51.     On December 6, 2020 Plaintiff filed a grievance regarding the attack.

52.     On December 9, 2020, Plaintiff received a ticket for fighting for the assault that occurred on November 25, 2020, even though Plaintiff never threw a punch and was clearly the victim of the assault.

53.     On December 12, 2020, Plaintiff was put on housed alone/out alone status.

54.     On January 12, 2021, Plaintiff's grievance appeal was denied, stating "unable to substantiate inmate allegation." This was despite the fact that the assault was on video and Plaintiff was treated at the hospital for his injuries.

55.     On February 1, 2021, Plaintiff filed a grievance regarding needing his stitches removed.

56.     The detainee who assaulted Plaintiff had previously made threats to Plaintiff in the past about his status as a former law enforcement officer.

57.     On April 22, 2022, after a bench trial, Plaintiff was found Not Guilty on all counts.

58.     Plaintiff was released from the custody of the Cook County Department of Corrections on April 23, 2022.

59.     Defendants knew that Plaintiff was to be held in protective custody while housed in the Cook County Jail.

60.     Defendants knew that Plaintiff was at a substantial risk for serious harm as a previous law enforcement officer if he was not kept in protective custody.

61.     Defendants knew that detainees, including Skinny Mo, had made threats against Plaintiff in the past.

10

62. Despite knowing that Plaintiff was supposed to be held in protective custody, knowing that Plaintiff was at serious risk for injury if he was removed from protective custody, and despite knowing that there were specific threats made against Plaintiff, Defendants removed Plaintiff from protective custody multiple times during his detention.

63. Plaintiff was assaulted when he was not kept in protective custody.

64. Defendants were deliberately indifferent to Plaintiff's health and safety by not maintaining his status as court ordered protective custody.

65. Defendants Superintendent Yoksoulian, Superintendent Queen, Superintendent Iracheta, Lieutenant Pondexter, and Officer LoBiancao knew through Plaintiff's complaints and grievances that Plaintiff was on court ordered protective custody because of the substantial risk to him of serious injury as a former law enforcement officer.

66. Despite knowing about the substantial risk to Plaintiff of serious injury, Defendants Superintendent Yoksoulian, Superintendent Queen, Superintendent Iracheta, Lieutenant Pondexter, and Officer LoBiancao did not do anything to ensure that Plaintiff was confined in accordance with his court ordered protective custody.

67. In fact, Officer LoBiancao actively spread the information to other officers and inmates that Plaintiff was former law enforcement, placing him in substantial risk for serious injury.

68.     Defendants were deliberately indifferent to Plaintiff's health and safety where Defendants witnessed the assault on Plaintiff and did not intervene to stop it.

69.     Defendant Lakowski, Sergeant Fitzgerald, and other officers and supervisors were aware of threats that Skinny Mo made against Plaintiff prior to the assault. Defendants did not intervene to prevent it.

70.     Defendant Lakowski, Sergeant Fitzgerald, and other officers and supervisors witnessed the assault on Plaintiff from the bubble and did not intervene to stop it.

71.     If Defendants had intervened to stop the assault on Plaintiff, he would not have been injured as extensively.

72.     Defendants intentionally, with malice and deliberate indifference of Plaintiff's rights, violated the Fourteenth Amendment by failing to protect Plaintiff.

73.     The Defendants' conduct has caused and continues to cause the Plaintiff to suffer substantial physical pain and mental/emotional distress.

## COUNT I

**(42 U.S.C. § 1983 – Violations of the Fourteenth Amendment v. Defendants Superintendent Yoksoulian, Superintendent Queen, Superintendent Iracheta, Lieutenant Pondexter, and Officer LoBiancao for Failure to Protect)**

74.     Plaintiff restates and realleges by reference paragraphs 1 through 73 above as though fully set forth herein.

75.     At all times relevant, Defendants were acting under the color of law and authority by virtue of their positions and authority with the Cook County Sheriff's Office.

76.     During all times relevant, Plaintiff was a pre-trial detainee at the Cook County Jail.

77.     Pre-trial detainees have rights under the due process clause of the Fourteenth Amendment to the Federal Constitution to receive reasonable protection from harm inflicted by other inmates.

78.     Defendants were deliberately indifferent to Plaintiff's health and safety by not maintaining his status as court ordered protective custody.

79.     Defendants Superintendent Yoksoulian, Superintendent Queen, Superintendent Iracheta, Lieutenant Pondexter, and Officer LoBiancao knew through Plaintiff's complaints and grievances that Plaintiff was on court ordered protective custody because of the substantial risk to him of serious injury as a former law enforcement officer.

80.     Despite knowing about the substantial risk to Plaintiff of serious injury, Defendants Superintendent Yoksoulian, Superintendent Queen, Superintendent Iracheta, Lieutenant Pondexter, and Officer LoBiancao did not do anything to ensure that Plaintiff was confined in accordance with his court ordered protective custody.

81.     The Defendants made an intentional decision with respect to the conditions under which the Plaintiff was confined when they moved him to the general

population and failed to abide by the Court's order that Plaintiff was to be held in protective custody while housed at the Cook County jail.

82.     Defendants' decisions with respect to the conditions under which the Plaintiff was confined put Plaintiff at substantial risk of suffering serious harm.

83.     Defendants did not take reasonable available measures to abate that risk even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the Defendants' conduct obvious.

84.     By not taking such measures, the Defendants caused the Plaintiff's injuries.

85.     Defendants have deprived Plaintiff, of his rights to protection and due process under the Fourteenth Amendment of the United States Constitution by being failing to maintain Plaintiff under protective custody despite being aware that he was at substantial risk of serious harm.

86.     Defendants' violations caused Plaintiff physical and emotional pain and suffering.

87.     Defendants acted with deliberate indifference to Plaintiff's health and safety.

**WHEREFORE**, Plaintiff respectfully requests:

A.  Compensatory damages in an amount to be determined at trial;

B.  A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

14

C.  A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

D.  The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E.  Punitive damages as allowed by law against Defendants;

F.  An award of reasonable attorneys' fees, costs, and litigation expenses; and

G.  Such other relief as the Court may deem just or equitable.

## COUNT II

**(42 U.S.C. § 1983 – Violations of the Fourteenth Amendment**
**v. Cook County Sheriff's Office for Failure to Protect)**

88.     Plaintiff restates and realleges by reference paragraphs 1 through 73 above as though fully set forth herein.

89.     The Sheriff's Office is also liable to Plaintiff for violations of the Fourteenth Amendment of the United States Constitution because the Sheriff's office has adopted and promulgated an official policy of failing to maintain detainees in protective custody, allowing detainees who should not be in protective custody to be confined with detainees who were in protective custody, and/or has created a widespread practice or custom of not maintaining detainees safely in protective custody, and/or the decisions of failing to maintain Plaintiff in protective custody were made by an official with final policy making authority.

90. Defendants have deprived Plaintiff, of his rights to protection and due process under the Fourteenth Amendment of the United States Constitution by failing to maintain Plaintiff under protective custody despite being aware that he was at substantial risk of serious injury.

91. Defendants' violations caused Plaintiff physical and emotional pain and suffering.

92. The actions of Defendants against Plaintiff violate his right to be free from physical harm inflicted by others in the jail under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

93. The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights as secured by 42 U.S.C. § 1983.

94. The actions of Defendants in intentionally violating Plaintiff's Constitutional rights caused Plaintiff physical and emotional pain and suffering, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

A. Compensatory damages in an amount to be determined at trial;

B. A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

C. A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

D. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein

and are determined to be in full compliance with the law;

E.  Punitive damages as allowed by law against Defendants;

F.  An award of reasonable attorneys' fees, costs, and litigation expenses; and

G.  Such other relief as the Court may deem just or equitable.

### COUNT III

**(42 U.S.C. § 1983 – Violations of the Fourteenth Amendment
v. Defendants Fitzgerald and Lakowski for Failure to Intervene)**

95.     Plaintiff restates and realleges by reference paragraphs 1 through 73 above as though fully set forth herein.

96.     At all times relevant, Defendants were acting under the color of law and authority by virtue of their positions and authority with the Cook County Sheriff's Office.

97.     During all times relevant, Plaintiff was a pre-trial detainee at the Cook County Jail.

98.     Defendants Fitzgerald and Lakowski have deprived Plaintiff, of his rights to due process under the Fourteenth Amendment of the United States Constitution by witnessing Plaintiff get assaulted and failing to intervene in the assault on Plaintiff despite being aware that he was at substantial risk of serious injury.

99.     Defendants Fitzgerald and Lakowski acted with deliberate indifference to Plaintiff's health and safety by failing to intervene in the assault on Plaintiff.

100.    The assault on Plaintiff by other inmates was an objectively serious danger that posed a substantial risk of serious harm to him in the presence of Defendants Fitzgerald and Lakowski.

101.    Defendants Fitzgerald and Lakowski watched the assault but did not intervene to protect Plaintiff exhibiting quintessential deliberate indifference to Plaintiff's health and safety.

102.    Defendants' violations caused Plaintiff physical and emotional pain and suffering.

**WHEREFORE**, Plaintiff respectfully requests:

A.  Compensatory damages in an amount to be determined at trial;

B.  A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

C.  A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

D.  The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E.  Punitive damages as allowed by law against Defendants;

F.  An award of reasonable attorneys' fees, costs, and litigation expenses; and

G.  Such other relief as the Court may deem just or equitable.

## COUNT IV

**(42 U.S.C. § 1983 – Violations of the Fourteenth Amendment
v. Cook County Sheriff's Office for Failure to Intervene)**

18

103.     Plaintiff restates and realleges by reference paragraphs 1 through 73 above as though fully set forth herein.

104.     The Sheriff's Office is also liable to Plaintiff for violations of the Fourteenth Amendment of the United States Constitution because the Sheriff's office has adopted and promulgated an official policy of failing to intervene in inmate assaults, and/or has created a widespread practice or custom of not intervening in inmate assaults, and/or the decisions to not intervene in the assault on Plaintiff was made by an official with final policy making authority.

105.     Defendants have deprived Plaintiff, of his rights to protection and due process under the Fourteenth Amendment of the United States Constitution by failing to intervene in the assault on Plaintiff despite being aware that he was at serious risk of injury.

106.     Defendants' violations caused Plaintiff physical and emotional pain and suffering.

107.     Defendants acted with deliberate indifference to Plaintiff's health and safety.

108.     The actions of Defendants against Plaintiff violate his right to be free from physical harm inflicted by others in the jail under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

109.     The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights as secured by 42 U.S.C. § 1983.

19

110.     The     actions     of     Defendants     in     intentionally     violating     Plaintiff's Constitutional rights caused Plaintiff physical and emotional pain and suffering, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

A.  Compensatory damages in an amount to be determined at trial;

B.  A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

C.  A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

D.  The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E.  Punitive damages as allowed by law against Defendants;

F.  An award of reasonable attorneys' fees, costs, and litigation expenses; and

G.  Such other relief as the Court may deem just or equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all allegations contained in this Petition that are triable before a jury.

Respectfully submitted,

CHRISTOPHER IRVING

*s/Heidi Karr Sleper*

_____
One of Plaintiff's Attorneys

*Electronically filed on November 23, 2022*

Heidi Karr Sleper (#6287421)
Jacob D. Exline (#6326874)
KURTZ, SLEPER & EXLINE, LLC
610 W. Roosevelt Rd., Ste A2
Wheaton, IL 60187
Phone: 630-323-9444
E-mail: hsleper@kselegal.com
E-mail: jexline@kselegal.com