## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER P. IRVING | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 cv 6599 |
| | ) | |
| vs. | ) | |
| | ) | Honorable Judge |
| COOK COUNTY SHERIFF'S OFFICE, | ) | Andrea R. Wood |
| SUPERINTENDENT MARTHA | ) | |
| YOKSOULIAN, in her individual capacity, | ) | JURY DEMANDED |
| SUPERINTENDENT ERICA QUEEN, in | ) | |
| her individual capacity, | ) | |
| SUPERINTENDENT ESEQUIEL | ) | |
| IRACHETA, in his individual capacity, | ) | |
| LIEUTENANT LANESHIA PONDEXTER, | ) | |
| in her individual capacity, SERGEANT | ) | |
| PATRICK FITZGERALD, in his individual | ) | |
| capacity, OFFICER DANIEL LAKOWSKI, | ) | |
| in his individual capacity, OFFICER | ) | |
| ALECIA LOBIANCAO, in her individual | ) | |
| capacity, and COOK COUNTY, as | ) | |
| indemnitor | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT

NOW COMES Defendants Cook County Sheriff's Office, Cook County as indemnitor, Patrick Fitzgerald, Esequiel Iracheta, Daniel Lakowski, Erica Queen, and Martha Yoksoulian (hereafter collectively "Defendants"), by their attorney KIMBERLY M. FOXX, State's Attorney of Cook County, through her Assistant State's Attorney, Christopher Nugarus, and answers Plaintiff's Complaint as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action to redress violations pursuant to 42 U.S.C. § 1983 for

failure to protect him from harm under the Fourteenth Amendment of the United States

Constitution.

**ANSWER: Defendants admit Plaintiff brings a failure to protect suit pursuant to 42**

**U.S.C. § 1983. Defendants deny any wrongdoing and the remaining allegations in**

**this paragraph.**

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 42

U.S.C. § 1983, and 28 U.S.C. § 1343.

**ANSWER: Defendants admit that jurisdiction is correct.**

3.      Further, venue is proper in this judicial district in accordance with 28

U.S.C. § 1391(b) and (c), Plaintiff resides in this district, Defendants' principal place of business

is in this district, and all events giving rise to Plaintiff's claims occurred within this district.

**ANSWER: Defendants admit that venue is correct.**

## PARTIES

4.      Plaintiff CHRISTOPHER IRVING ("Plaintiff" or "Irving") is a citizen of the

United States who resides in Cook County, Illinois.

**ANSWER: Defendants admit the allegations in paragraph 4.**

5.      At the time of the occurrence of these events, Irving was a pre-trial detainee in the

custody of the Cook County Department of Corrections.

**ANSWER:  Defendants admit the allegations in paragraph 5.**

6.     At all relevant times, Defendant COOK COUNTY SHERIFF'S OFFICE maintained the Cook County Department of Corrections. Sheriff Thomas Dart has the ultimate decision-making authority in terms of the Sheriff's Office's treatment of Plaintiff.

**ANSWER: Defendants admit that the Cook County Sheriff's Office is statutorily responsible for the Cook County Department of Corrections. Defendants admit only to those duties that are imposed by law with regard to the Cook County Department of Corrections, and Defendants deny any allegations of legal duties inconsistent therewith.**

7.     At all relevant times hereto, Defendant MARTHA SUPERINTENDENT YOUKSOULIAN served in her position of at the discretion and pleasure of the Sheriff.

**ANSWER: Defendant Yoksoulian admits to being employed by the Cook County Sheriff's Office ("CCSO") and admits that Superintendents serve at the pleasure of the CCSO Administration. Defendants deny any remaining allegations in this paragraph.**

8.     Defendant SUPERINTENDENT YOKSOULIAN is a final policy maker and decision maker for the Sheriff's Office and with regard to her acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant SUPERINTENDENT YOUKSOULIAN.

**ANSWER: Denied.**

9.     Defendant SUPERINTENDENT YOUKSOULIAN acted under color of law in the acts and omissions described herein.

**ANSWER: Defendants admit that Defendant Yoksoulian acted under color of law in her capacity as Superintendent in the Cook County Department of Corrections and deny any remaining allegations in this paragraph.**

10.     At all relevant times hereto, Defendant SUPERINTENDENT ERICA QUEEN served in her position of at the discretion and pleasure of the Sheriff.

**ANSWER:  Defendant Queen admits to being employed by the Cook County Sheriff's Office and admits that Superintendents serve at the pleasure of the CCSO Administration. Defendants deny any remaining allegations in this paragraph.**

11.     Defendant SUPERINTENDENT QUEEN is a final policy maker and decision maker for the Sheriff's Office and with regard to her acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant SUPERINTENDENT QUEEN.

**ANSWER: Denied.**

12.     Defendant SUPERINTENDENT QUEEN acted under color of law in the acts and omissions described herein.

**ANSWER: Defendants admit that Defendant Queen acted under color of law in her capacity as a Superintendent in the Cook County Department of Corrections at times relevant to the allegations in the Complaint.  Defendants deny any remaining allegations in this paragraph.**

13.     At all relevant times hereto, Defendant SUPERINTENDENT ESEQUIEL IRACHETA served in his position of at the discretion and pleasure of the Sheriff.

**ANSWER: Defendant Iracheta admits to being employed by the Cook County Sheriff's Office and admits that Superintendents serve at the pleasure of the CCSO Administration. Defendants deny any remaining allegations in this paragraph.**

4

14.     Defendant SUPERINTENDENT IRACHETA is a final policy maker and decision maker for the Sheriff's Office and with regard to his acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant SUPERINTENDENT IRACHOTA.

**ANSWER: Denied.**

15.     Defendant SUPERINTENDENT IRACHETA acted under color of law in the acts and omissions described herein.

**ANSWER: Defendants admit that Defendant Iracheta acted under color of law in his capacity as a Superintendent in the Cook County Department of Corrections, and deny any remaining allegations in this paragraph.**

16.     At all relevant times hereto, Defendant LIEUTENANT LANESHIA PONDEXTER served in her position of at the discretion and pleasure of the Sheriff.

**ANSWER: Defendants admit to Defendant Pondexter being employed by the Cook County Sheriff's Office and deny any remaining allegations in this paragraph.**

17.     Defendant LIEUTENANT PONDEXTER is a final policy maker and decision maker for the Sheriff's Office and with regard to her acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant LIEUTENANT PONDEXTER.

**ANSWER: Denied.**

18.     Defendant LIEUTENANT LANESHIA PONDEXTER acted under color of law in the acts and omissions described herein.

**ANSWER: Defendants admit Defendant Pondexter acted under color of law in her capacity as a Correctional Rehabilitation Worker in the Cook County Department of Corrections. Defendants deny Defendant Pondexter ever held the rank or position of Lieutenant and deny any remaining allegations in this paragraph.**

5

19.     At all relevant times hereto, Defendant SERGEANT FITZGERALD served in his position of at the discretion and pleasure of the Sheriff.

**ANSWER: Defendant Fitzgerald admits to being employed by the Cook County Sheriff's Office, but denies the remaining allegations in this paragraph.**

20.     Defendant SERGEANT FITZGERALD is a final policy maker and decision maker for the Sheriff's Office and with regard to his acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant SERGEANT FITZGERALD.

**ANSWER: Denied.**

21.     Defendant SERGEANT FITZGERALD acted under color of law in the acts and omissions described herein.

**ANSWER: Defendants admit that Defendant Fitzgerald acted under color of law in his capacity as Sergeant in the Cook County Department of Corrections, and deny the remaining allegations in this paragraph.**

22.     At all relevant times hereto, Defendant OFFICER LAKOWSKI served in his position of at the discretion and pleasure of the Sheriff.

**ANSWER: Defendant Lakowski admits to being employed by the Cook County Sheriff's Office, but denies the remaining allegations in this paragraph.**

23.     Defendant OFFICER LAKOWSKI is a final policy maker and decision maker for the Sheriff's Office and with regard to his acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant OFFICER LAKOWSKI.

**ANSWER: Denied.**

24.     Defendant OFFICER LAKOWSKI acted under color of law in the acts and omissions described herein.

**ANSWER: Defendants admit that Defendant Lakowski acted under color of law in his capacity as a Correctional Officer in the Cook County Department of Corrections, and deny the remaining allegations in this paragraph.**

25.     At all relevant times hereto, Defendant LOBIANCAO served in her position of at the discretion and pleasure of the Sheriff.

**ANSWER: Defendants admit that Alicia LoBianco was previously an employee of the Office of the Cook County Sheriff but deny that Defendant LoBianco is currently an employee.**

26.     Defendant OFFICER LOBIANCAO is a final policy maker and decision maker for the Sheriff's Office and with regard to her acts and conduct alleged herein as the Sheriff delegated final policy making authority to Defendant OFFICER LOBIANCAO.

**ANSWER: Denied.**

27.     Defendant OFFICER LOBIANCAO acted under color of law in the acts and omissions described herein.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

28.     Plaintiff exhausted his administrative remedies by filing a grievance and appeal, which was denied, regarding the assault that occurred and the conditions preceding it that led to the assault.

**ANSWER:  Defendants admit that Plaintiff Christopher Irving filed a grievance dated December 6, 2020, and a corresponding appeal of that grievance regarding**

the November 25, 2020, incident, and deny the remaining allegations in this

paragraph.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

29.     Plaintiff was a police officer in Calumet Park, Illinois from October 1993 to May

2003.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief**

**about the truth of the allegations in this paragraph.**

30.     Plaintiff was arrested on June 26, 2019, and charged with eight counts of First

Degree Murder (750-5/9-1(A)(1)) and (750-5/9-1(A)(2)); and one count of Aggravated

Discharge of a Firearm (720-5/24-1.2(A)(2)).

**ANSWER: Defendants admit the allegations in paragraph 30.**

31.     Plaintiff was placed in the custody of the Cook County Department of

Corrections.

**ANSWER: Defendants admit that Plaintiff Christopher Irving was remanded by a**

**judge into custody at Cook County Department of Corrections from June 28, 2019,**

**until April 23, 2022, pursuant to a judicial order.**

32.     Plaintiff was arraigned on June 28, 2019. He was denied bail and ordered placed

in protective custody. The Order specifically set out the risk to Plaintiff that required protective

custody stating: "As a former member of law enforcement Christopher Irving shall be placed in

protective custody while in the Cook County Jail."

**ANSWER: Defendants admit a judicial Order was entered on June 28, 2019, which**

**provided, "As a former member of law enforcement Christopher Irving shall be**

**placed in protective custody while in the Cook County Jail." Defendants deny any**

**wrongdoing and deny the remaining allegations contained in this paragraph.**

33.     The Prisoner Data Sheet dated June 28, 2019, stated that Plaintiff was to be in protective custody.

**ANSWER: Defendants admit the allegations in paragraph 33.**

34.     On June 28, 2019, an Incident Report was created by Officer Cruz that Plaintiff was on court ordered protective custody. Notifications were made to Lt. Rodriquez, Superintendent Queen, Investigator Orlich, and others as necessary.

**ANSWER:  Defendants admit that the Incident Report RCDC-2019-8825 dated**

**June 28, 2019 was created by Sgt. Cruz and states, "On June 28, 2019 at**

**approximately 1830, I (Sgt. Cruz #3248) was informed that Irving, Christopher (on**

**the new in male intake) is a court ordered protective custody." Defendants further**

**admit that said incident report states that Lt. Rodriguez and AO Line Inv. Orlich**

**were notified, and further states that "Supt Queen will be notified via CCOMS and**

**email as will all other necessary parties.".**

35.     The continuance Orders of the Court dated July 18, 2019, July 30, 2019, August 14, 2019, September 16, 2019, September 20, 2019, September 27, 2019, and November 6, 2019, December 13, 2019, January 31, 2020, March 10, 2020 were all marked "P.C." noting that the Plaintiff was to be held protective custody.

**ANSWER:  Defendants admit that Plaintiff had a CCDOC "protective custody"**

**alert between June 28, 2019 and March 10, 2020, but Defendants lack knowledge or**

**information sufficient to form a belief about the truth of the remaining allegations**

**in this paragraph.**

9

36.     Plaintiff was uniformed in a yellow jumpsuit that indicated that he was supposed to be a protective custody detainee.

**ANSWER: Defendants admit that Plaintiff had a CCDOC "protective custody" alert between June 28, 2019 and March 10, 2020, and that Plaintiff was housed in a protective custody tier, but Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

37.     On February 17, 2020, Plaintiff filed a grievance regarding not receiving commissary while housed in Division 8 Cermak in an isolation cell. Plaintiff again notified Defendants through the grievance process that he was court ordered protective custody.

**ANSWER: Defendants admit that Plaintiff had a CCDOC "protective custody" alert as of February 17, 2020. Defendants further admit Plaintiff filed a grievance dated February 17, 2020, regarding commissary while housed in Division 8 Cermak. Defendants deny that Plaintiff was not in protective custody housing on or about Feb 17, 2020, and Defendants deny the remaining allegations in this paragraph.**

38.     Plaintiff was moved and housed in general population from April 21, 2020 to May 21, 2020. On May 19, 2020, Plaintiff filed a grievance stating that he was supposed to be court ordered protective custody but was being housed in general population with a cellmate. He complained that he was receiving daily verbal threats, having urine and feces thrown at him and sprayed with spray bottles.

**ANSWER: Defendants deny that Plaintiff was not in protective custody housing between April 21, 2020 to May 21, 2020. Defendants admit Plaintiff filed a grievance dated May 19, 2020, alleging he was in court-ordered protective custody and was receiving verbal threats, thefts, and having urine and feces thrown and sprayed at**

10

him by other inmates. **Defendants deny the remaining allegations in this paragraph and deny any wrongdoing.**

39.     On May 21, 2020, Plaintiff was moved to Division 9-2-F. Plaintiff was housed in a cell by himself but would be with other detainees when out of his cell. While in this Division, Plaintiff's former shift partner from when he worked in law enforcement was assigned as a Correctional Officer. CO Alecia LoBianco, stated to Plaintiff, "Don't tell anyone you know me." Plaintiff responded, "likewise."

> **ANSWER: Defendants admit that Plaintiff was incarcerated in Cook County Department Corrections, Division 9, Tier 2F from May 21, 2020 until October 23, 2020. Defendants deny that Plaintiff was not in protective custody housing between May 21, 2020 and October 23, 2020. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

40.     On July 25, 2020 another Correctional Officer, Ewald, asked Plaintiff how long he had been a cop. Correctional Officer Ewald said that he learned that Plaintiff was a police officer from Officer LoBianco. Inmate Devonte Watson, "Little D," also said that he was told by a correctional officer that Plaintiff was a cop.

> **ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

41.     On August 11, 2020, Plaintiff filed a grievance complaining about the spread of information. Superintendent Irachota responded to the grievance stating that he was aware of the situation and had informed the Lieutenants and that CO LoBiancao would not be assigned to Plaintiff's unit.

**ANSWER: Defendants admit Plaintiff filed a grievance dated August 11, 2020, alleging the spread of information and that a response was provided to Plaintiff. Defendants deny the remaining allegations in this paragraph.**

42.     On October 23, 2020, Plaintiff was moved to Division 10-1-C again housing him in general population with a cellmate. Plaintiff complained that there was a rise in COVID 19 cases. He also complained that he was in fear for his health and safety. Plaintiff filed a grievance that was signed by Lt. Pondexter on October 27, 2020. Superintendent Yoksoulian denied Plaintiff's grievance on October 30, 2020.

**ANSWER: Defendants admit that Plaintiff was incarcerated in Cook County Department of Corrections, Division 10, Tier 1C from October 23, 2020 to November 25, 2020 and that Plaintiff filed a grievance dated October 23, 2020. Defendants deny that Plaintiff was not in protective custody housing between October 23, 2020 to November 25, 2020.   Defendants deny that Plaintiff was not in medically appropriate protective custody housing between October 23, 2020 and November 25, 2020. Defendants deny any wrongdoing and deny the remaining allegations in this paragraph.**

43.     Plaintiff complained verbally and in writing over 4 months that he needed to be housed in "housed alone/out alone status" due to the threats that he was receiving. Plaintiff filed three grievances expressing his health and safety concerns.

**ANSWER: Defendants admit Plaintiff filed grievances pertaining to health and safety concerns at times relevant to the allegations in the Complaint.  Defendants deny that Plaintiff was not in protective custody at times relevant to the allegations**

**in the Complaint, and further deny any wrongdoing. Defendants deny the remaining allegations in this paragraph.**

44.     On November 20, 2020, Plaintiff informed the judge that he was supposed to be confined in protective custody and he needed to be "housed alone/ out alone." The Judge said that it was within the Sheriff's Office's authority to grant "housed alone/out alone status."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

45.     On November 25, 2020, Plaintiff was assaulted in the Division 10 dayroom. Officer Lakowski and Sergeant Fitzgerald were working in the "bubble." Officer Lakowski heard inmate Cedric Johnson, "Skinny Mo," threatening Plaintiff prior to the assault. Plaintiff let Skinny Mo use the microwave first, then he used it, closing the interlock around him to protect himself. Plaintiff microwaved some oatmeal and took a walk around the day room while stirring his oatmeal. When Plaintiff was on the far side of the dayroom, Skinny Mo ran up and punched him in the face. Skinny Mo advanced on Plaintiff again and grabbed him and threw him against the metal dayroom table and stools. Skinny Mo knocked Plaintiff to the ground and straddled him punching him repeatedly in the face. Plaintiff lost consciousness for a few seconds.

**ANSWER: Defendants admit that Plaintiff was involved in an altercation on November 25, 2020, with another detainee, while in protective custody housing in Division 10. Defendants deny any wrongdoing. Defendants are unable to admit or deny the remaining narrative allegations of this paragraph.**

46.     No officer intervened to stop the assault despite seeing it from the "bubble."

**ANSWER: Denied.**

47.     After Skinny Mo left Plaintiff lying on the ground, Plaintiff got up and walked toward the bubble to the officers for help. Officer Lakowski was standing at the door waiting for Plaintiff.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

48.     Plaintiff was let into the hallway where he sat writhing and moaning in pain for several minutes waiting for medical treatment.

**ANSWER: Denied.**

49.     Plaintiff was hospitalized for three and ½ days at Mount Sinai Hospital for his physical injuries. Plaintiff had a broken nose that required stitches. He had fractured ribs which perforated his lungs. The Doctor said he will need plastic surgery in the future. Plaintiff continues to have back pain and difficulty breathing. Plaintiff also continues to have trouble hearing, ringing in his ears, and issues with his eyesight.

**ANSWER:  Defendants admit Plaintiff was hospitalized and received medical attention for physical injuries following the November 25, 2020, incident. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

50.     Plaintiff also suffered emotional injuries as a result of the assault.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

51.     On December 6, 2020, Plaintiff filed a grievance regarding the attack.

**ANSWER: Defendants admit the allegations in paragraph 51.**

52.     On December 9, 2020, Plaintiff received a ticket for fighting for the assault that occurred on November 25, 2020, even though Plaintiff never threw a punch and was clearly the victim of the assault.

**ANSWER: Denied.**

53.    On December 12, 2020, Plaintiff was put on housed alone/out alone status.

**ANSWER: Defendants deny the allegations in this paragraph. Defendants admit that Plaintiff was on "House Alone/Out Alone Status" between December 2, 2020 and December 14, 2020.**

54.     On January 12, 2021, Plaintiff's grievance appeal was denied, stating "unable to substantiate inmate allegation." This was despite the fact that the assault was on video and Plaintiff was treated at the hospital for his injuries.

**ANSWER: Defendants admit that Plaintiff's request for an appeal dated January 8, 2021 was subsequently denied. Defendants deny any wrongdoing and deny the remaining allegations in this paragraph.**

55.     On February 1, 2021, Plaintiff filed a grievance regarding needing his stitches removed.

**ANSWER: Defendants admit the allegations in paragraph 55.**

56.     The detainee who assaulted Plaintiff had previously made threats to Plaintiff in the past about his status as a former law enforcement officer.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

57.     On April 22, 2022, after a bench trial, Plaintiff was found Not Guilty on all counts.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

58.     Plaintiff was released from the custody of the Cook County Department of Corrections on April 23, 2022.

**ANSWER: Defendants admit the allegations in paragraph 58.**

59.     Defendants knew that Plaintiff was to be held in protective custody while housed in the Cook County Jail.

**ANSWER:  Defendants admit that Plaintiff had a "protective custody" alert beginning on June 28, 2019, and ending at the time of his discharge from custody.**

60.     Defendants knew that Plaintiff was at a substantial risk for serious harm as a previous law enforcement officer if he was not kept in protective custody.

**ANSWER: Denied.**

61.     Defendants knew that detainees, including Skinny Mo, had made threats against Plaintiff in the past.

**ANSWER: Denied.**

62.     Despite knowing that Plaintiff was supposed to be held in protective custody, knowing that Plaintiff was at serious risk for injury if he was removed from protective custody, and despite knowing that there were specific threats made against Plaintiff, Defendants removed Plaintiff from protective custody multiple times during his detention.

**ANSWER: Denied.**

63.     Plaintiff was assaulted when he was not kept in protective custody.

**ANSWER: Denied.**

16

64. Defendants were deliberately indifferent to Plaintiff's health and safety by not maintaining his status as court ordered protective custody.

**ANSWER: Denied.**

65. Defendants Superintendent Yoksoulian, Superintendent Queen, Superintendent Iracheta, Lieutenant Pondexter, and Officer LoBiancao knew through Plaintiff's complaints and grievances that Plaintiff was on court ordered protective custody because of the substantial risk to him of serious injury as a former law enforcement officer.

**ANSWER: Denied.**

66. Despite knowing about the substantial risk to Plaintiff of serious injury, Defendants Superintendent Yoksoulian, Superintendent Queen, Superintendent Iracheta, Lieutenant Pondexter, and Officer LoBiancao did not do anything to ensure that Plaintiff was confined in accordance with his court ordered protective custody.

**ANSWER: Denied.**

67. In fact, Officer LoBiancao actively spread the information to other officers and inmates that Plaintiff was former law enforcement, placing him in substantial risk for serious injury.

**ANSWER: Defendants make no answer to this paragraph because it is not directed towards them. To the extent that an answer is necessary, Defendants deny the allegations in this paragraph.**

68. Defendants were deliberately indifferent to Plaintiff's health and safety where Defendants witnessed the assault on Plaintiff and did not intervene to stop it.

**ANSWER: Denied.**

69.     Defendant Lakowski, Sergeant Fitzgerald, and other officers and supervisors were aware of threats that Skinny Mo made against Plaintiff prior to the assault. Defendants did not intervene to prevent it.

**ANSWER: Denied.**

70.     Defendant Lakowski, Sergeant Fitzgerald, and other officers and supervisors witnessed the assault on Plaintiff from the bubble and did not intervene to stop it.

**ANSWER: Denied.**

71.     If Defendants had intervened to stop the assault on Plaintiff, he would not have been injured as extensively.

**ANSWER: Denied.**

72.     Defendants intentionally, with malice and deliberate indifference of Plaintiff's rights, violated the Fourteenth Amendment by failing to protect Plaintiff.

**ANSWER: Denied.**

73.     The Defendants' conduct has caused and continues to cause the Plaintiff to suffer substantial physical pain and mental/emotional distress.

**ANSWER: Denied.**

## COUNT I

**(42 U.S.C. § 1983 – Violations of the Fourteenth Amendment v. Defendants Superintendent Yoksoulian, Superintendent Queen, Superintendent Iracheta, Lieutenant Pondexter, and Officer LoBiancao for Failure to Protect)**

74.     Plaintiff restates and realleges by reference paragraphs 1 through 73 above as though fully set forth herein.

**ANSWER: Defendants reassert and incorporate by reference all prior answers as if set forth fully herein.**

18

75.     At all times relevant, Defendants were acting under the color of law and authority by virtue of their positions and authority with the Cook County Sheriff's Office.

**ANSWER: Defendants admit the allegations in paragraph 75.**

76.     During all times relevant, Plaintiff was a pre-trial detainee at the Cook County Jail.

**ANSWER: Defendants admit the allegations in paragraph 76.**

77.     Pre-trial detainees have rights under the due process clause of the Fourteenth Amendment to the Federal Constitution to receive reasonable protection from harm inflicted by other inmates.

**ANSWER: Defendants admit pre-trial detainees have rights pursuant to the Fourteenth Amendment and deny that this paragraph accurately sets forth those rights.**

78.     Defendants were deliberately indifferent to Plaintiff's health and safety by not maintaining his status as court ordered protective custody.

**ANSWER: Denied.**

79.     Defendants Superintendent Yoksoulian, Superintendent Queen, Superintendent Iracheta, Lieutenant Pondexter, and Officer LoBiancao knew through Plaintiff's complaints and grievances that Plaintiff was on court ordered protective custody because of the substantial risk to him of serious injury as a former law enforcement officer.

**ANSWER: Defendants admit that Plaintiff had a "protective custody" alert beginning on June 28, 2019, and ending at the time of his discharge from custody. Defendants deny that Plaintiff was not in protective custody housing while in CCDOC custody. Defendants deny the remaining allegations of this paragraph.**

80.     Despite knowing about the substantial risk to Plaintiff of serious injury, Defendants Superintendent Yoksoulian, Superintendent Queen, Superintendent Iracheta, Lieutenant Pondexter, and Officer LoBiancao did not do anything to ensure that Plaintiff was confined in accordance with his court ordered protective custody.

**ANSWER: Denied.**

81.     The Defendants made an intentional decision with respect to the conditions under which the Plaintiff was confined when they moved him to the general population and failed to abide by the Court's order that Plaintiff was to be held in protective custody while housed at the Cook County jail.

**ANSWER: Denied.**

82.     Defendants' decisions with respect to the conditions under which the Plaintiff was confined put Plaintiff at substantial risk of suffering serious harm.

**ANSWER: Denied.**

83.     Defendants did not take reasonable available measures to abate that risk even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the Defendants' conduct obvious.

**ANSWER: Denied.**

84.     By not taking such measures, the Defendants caused the Plaintiff's injuries.

**ANSWER: Denied**

85.     Defendants have deprived Plaintiff, of his rights to protection and due process under the Fourteenth Amendment of the United States Constitution by being failing to maintain Plaintiff under protective custody despite being aware that he was at substantial risk of serious harm.

20

**ANSWER: Denied.**

86.    Defendants' violations caused Plaintiff physical and emotional pain and suffering.

**ANSWER: Denied.**

87.    Defendants acted with deliberate indifference to Plaintiff's health and safety.

**ANSWER: Denied.**

**WHEREFORE**, Plaintiff respectfully requests:

A.    Compensatory damages in an amount to be determined at trial;

B.    A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

C.    A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

D.    The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E.    Punitive damages as allowed by law against Defendants;

F.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

G.    Such other relief as the Court may deem just or equitable.

**ANSWER: Defendants deny Plaintiff is entitled to any relief of any kind.**

## COUNT II

### (42 U.S.C. § 1983 – Violations of the Fourteenth Amendment
### v. Cook County Sheriff's Office for Failure to Protect)

88.    Plaintiff restates and realleges by reference paragraphs 1 through 73 above as though fully set forth herein.

**ANSWER: Defendants reassert and incorporate by reference all prior answers as if**

**set forth fully herein.**

89.     The Sheriff's Office is also liable to Plaintiff for violations of the Fourteenth

Amendment of the United States Constitution because the Sheriff's office has adopted and

promulgated an official policy of failing to maintain detainees in protective custody, allowing

detainees who should not be in protective custody to be confined with detainees who were in

protective custody, and/or has created a widespread practice or custom of not maintaining

detainees safely in protective custody, and/or the decisions of failing to maintain Plaintiff in

protective custody were made by an official with final policy making authority.

**ANSWER: Denied.**

90.     Defendants have deprived Plaintiff, of his rights to protection and due process

under the Fourteenth Amendment of the United States Constitution by failing to maintain

Plaintiff under protective custody despite being aware that he was at substantial risk of serious

injury.

**ANSWER: Denied.**

91.     Defendants' violations caused Plaintiff physical and emotional pain and suffering.

**ANSWER: Denied.**

92.     The actions of Defendants against Plaintiff violate his right to be free from

physical harm inflicted by others in the jail under the Fourteenth Amendment of the United

States Constitution and 42 U.S.C. § 1983.

**ANSWER: Denied.**

93.     The actions of Defendants were intentional, willful, and malicious and/or in

deliberate indifference for Plaintiff's rights as secured by 42 U.S.C. § 1983.

**ANSWER: Denied.**

94.     The actions of Defendants in intentionally violating Plaintiff's Constitutional rights caused Plaintiff physical and emotional pain and suffering, and other consequential damages.

**ANSWER: Denied.**

**WHEREFORE**, Plaintiff respectfully requests:

A.      Compensatory damages in an amount to be determined at trial;

B.      A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

C.      A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

D.      The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E.      Punitive damages as allowed by law against Defendants;

F.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

G.      Such other relief as the Court may deem just or equitable.

**ANSWER: Defendants deny Plaintiff is entitled to any relief of any kind.**

## COUNT III

**(42 U.S.C. § 1983 – Violations of the Fourteenth Amendment**
**v. Defendants Fitzgerald and Lakowski for Failure to Intervene)**

95.     Plaintiff restates and realleges by reference paragraphs 1 through 73 above as though fully set forth herein.

**ANSWER: Defendants reassert and incorporate by reference all prior answers as if set forth fully herein.**

96.     At all times relevant, Defendants were acting under the color of law and authority by virtue of their positions and authority with the Cook County Sheriff's Office.

23

**ANSWER: Defendants admit the allegations in paragraph 96.**

97.     During all times relevant, Plaintiff was a pre-trial detainee at the Cook County Jail.

**ANSWER: Defendants admit the allegations in this paragraph 97.**

98.     Defendants Fitzgerald and Lakowski have deprived Plaintiff, of his rights to due process under the Fourteenth Amendment of the United States Constitution by witnessing Plaintiff get assaulted and failing to intervene in the assault on Plaintiff despite being aware that he was at substantial risk of serious injury.

**ANSWER: Denied.**

99.     Defendants Fitzgerald and Lakowski acted with deliberate indifference to Plaintiff's health and safety by failing to intervene in the assault on Plaintiff.

**ANSWER: Denied.**

100.    The assault on Plaintiff by other inmates was an objectively serious danger that posed a substantial risk of serious harm to him in the presence of Defendants Fitzgerald and Lakowski.

**ANSWER: Denied.**

101.    Defendants Fitzgerald and Lakowski watched the assault but did not intervene to protect Plaintiff exhibiting quintessential deliberate indifference to Plaintiff's health and safety.

**ANSWER: Denied.**

102.  Defendants' violations caused Plaintiff physical and emotional pain and suffering.

**ANSWER: Denied.**

**WHEREFORE**, Plaintiff respectfully requests:

A.     Compensatory damages in an amount to be determined at trial;

B.    A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

C.    A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

D.    The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E.    Punitive damages as allowed by law against Defendants;

F.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

G.    Such other relief as the Court may deem just or equitable.

**ANSWER: Defendants deny Plaintiff is entitled to any relief of any kind.**

<u>**COUNT IV**</u>

**(42 U.S.C. § 1983 – Violations of the Fourteenth Amendment**
**v. Cook County Sheriff's Office for Failure to Intervene)**

103.    Plaintiff restates and realleges by reference paragraphs 1 through 73 above as though fully set forth herein.

**ANSWER: Defendants reassert and incorporate by reference all prior answers as if set forth fully herein.**

104.    The Sheriff's Office is also liable to Plaintiff for violations of the Fourteenth Amendment of the United States Constitution because the Sheriff's office has adopted and promulgated an official policy of failing to intervene in inmate assaults, and/or has created a widespread practice or custom of not intervening in inmate assaults, and/or the decisions to not intervene in the assault on Plaintiff was made by an official with final policy making authority.

**ANSWER: Denied.**

105.    Defendants have deprived Plaintiff, of his rights to protection and due process under the Fourteenth Amendment of the United States Constitution by failing to intervene in the assault on Plaintiff despite being aware that he was at serious risk of injury.

**ANSWER: Denied.**

106.  Defendants' violations caused Plaintiff physical and emotional pain and suffering.

**ANSWER: Denied.**

107.  Defendants acted with deliberate indifference to Plaintiff's health and safety.

**ANSWER: Denied.**

108.    The actions of Defendants against Plaintiff violate his right to be free from physical harm inflicted by others in the jail under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

**ANSWER: Denied.**

109.  The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights as secured by 42 U.S.C. § 1983.

**ANSWER: Denied.**

110.    The actions of Defendants in intentionally violating Plaintiff's Constitutional rights caused Plaintiff physical and emotional pain and suffering, and other consequential damages.

**ANSWER: Denied.**

**WHEREFORE**, Plaintiff respectfully requests:

A.    Compensatory damages in an amount to be determined at trial;

B.    A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

C.   A permanent injunction requiring the Defendants adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

D.   The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E.   Punitive damages as allowed by law against Defendants;

F.   An award of reasonable attorneys' fees, costs, and litigation expenses; and

G.   Such other relief as the Court may deem just or equitable.

**ANSWER: Defendants deny Plaintiff is entitled to any relief of any kind.**

## AFFIRMATIVE DEFENSES

Further answering Plaintiff's complaint, and without prejudice to the denials in its Answer, Defendants assert the following separate affirmative defenses to Plaintiff's Complaint:

**I.   42 U.S.C. §1997e(a)**

1.   Under Section 1997e(a) of the Prisoner Litigation Reform Act (the "PLRA"), plaintiff must exhaust his administrative remedies before filing a Section 1983 lawsuit for damages.

2.   Plaintiff has not exhausted his administrative remedies as the PLRA requires. See *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

**II.   42 U.S.C. §1997e(e)**

3.   Plaintiff has requested damages for physical injuries and mental distress.

4.   Section 1997e(e) of the PRLA provides:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code).

5.   Plaintiff cannot show physical injury caused by Defendants and, as a result, under Section 1997e(e) of the PRLA cannot seek damages for alleged mental distress.

### III.    Qualified Immunity

6.      The conduct of Defendants was at all times objectively reasonable and did not violate any of Plaintiff's clearly established Constitutional rights.

7.      Accordingly, Defendants are entitled to the defense of qualified immunity.

### IV.    Failure to Mitigate

8.      At all relevant times, Plaintiff owed a duty to take reasonable measures to mitigate his alleged injuries and damages.

9.      To the extent it is revealed that Plaintiff failed to take reasonable measures to mitigate his alleged injuries and damages, those facts shall be presented to preclude recovery for Plaintiff.

### V.    Punitive Damages

10.      Local governments are immune from punitive damages liability under § 1983. See *City of Newport v. Fact Concerts*, 453 U.S. 247 (1981). Moreover, an official capacity suit against an individual defendant is tantamount to a claim against the government entity itself. *Guzman v. Sheahan, 495 F.3d 852, 859* (7th Cir. 2007). Therefore, to the extent Defendants were named in their official capacity and Plaintiffs may seek punitive damages, they are immune from having to pay punitive damages to Plaintiffs.

### VI.    Estoppel

11.      To the extent it is revealed that Plaintiff's damages, if any, were a direct and foreseeable result of Plaintiff's own voluntary actions, those facts shall be presented to preclude recovery for Plaintiff.

12.     Plaintiff is estopped from seeking damages, if any exist, since any such damages are a direct and foreseeable result of his own voluntary conduct.

Defendants reserve the right to amend the affirmative defenses at any point throughout the course of discovery.

### **JURY DEMAND**

With regard to any issue that may be appropriately heard by a jury in this cause of action, Defendants hereby demand a jury trial.


WHEREFORE, Defendants respectfully request that this Honorable Court enter an Order (a) dismissing Plaintiff's Complaint with prejudice; (b) assessing its costs against Plaintiff; and (c) providing it with any other necessary and just relief.

Respectfully submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

By:     */s/ Christopher Nugarus*
Christopher Nugarus
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5527
E: Christopher.nugarus2@cookcountyil.gov

## CERTIFICATE OF SERVICE

I hereby certify that I have caused true and correct copies of the above and foregoing to be served on Plaintiff pursuant to ECF, in accordance with the rules of electronic filing of documents on this 9th day of February, 2023.


*/s/ Christopher Nugarus*
Christopher Nugarus

30